# EXHIBIT A

# A G R E E M E N T

This Agreement is entered into as of this 29th day of
November            , 19 93 , by and between AAMCO TRANSMISSIONS, INC.,
a Pennsylvania corporation with principal offices located at One
Presidential Boulevard, Bala Cynwyd, Pennsylvania (hereinafter
referred to as "AAMCO"), and  James M. Dunlap
                                        ("Franchisee").

## W I T N E S S E T H :

WHEREAS, on  September 26, 1978         , Franchisee executed
and received from AAMCO a Franchise Agreement for the operation
of an AAMCO franchised transmission repair center located at
4117 Portsmouth Blvd., Portsmouth, VA 23701          ("Repair Center");

WHEREAS, the term of the Franchise Agreement commenced
on  September 26, 1978 , and terminated on September 25, 1993          ;

WHEREAS, Franchisee has operated a transmission repair
facility at the above address under the "AAMCO" trademarks and
trade name; and

WHEREAS, Franchisee has not followed either the
provisions of the Franchise Agreement or AAMCO's procedures or
policies;

WHEREAS, the parties agree that Franchisee's failure to
follow either the provisions of the Franchise Agreement or
AAMCO's policies and procedures constitutes good cause for
AAMCO's not renewing the franchise relationship with Franchisee;
however, AAMCO is willing to permit Franchisee to enter into a
one-year trial agreement commencing on the above-stated
termination date of Franchisee's prior Franchise Agreement, in
order to determine whether Franchisee will comply and is capable
of complying with AAMCO's procedures and policies in accordance
with AAMCO's current form of Franchise Agreement.

NOW, THEREFORE, for and in consideration of the mutual
promises and covenants contained herein, and for other good and
valuable consideration, the receipt and sufficiency of which are
hereby acknowledged, the parties hereto, intending to be legally
bound hereby, agree as follows:

1.  AAMCO hereby offers and Franchisee hereby accepts a
one-year license commencing on September 26, 1993          , and
ending on  September 25, 1994      , under which Franchisee may

92-1 (1) Renewal

operate the AAMCO Repair Center at the address specified above. During this one-year period, Franchisee, his agents, servants, employees, and all persons who are or may come under his control, agree to abide by all the terms, covenants and conditions of the Franchise Agreement and the various attachments thereto which are attached hereto and incorporated herein as Exhibit "A", including timely payment of all accounts provided therein and rendering of complete customer satisfaction; provided, however, that the following terms shall specifically apply during the one-year period and any subsequent period or periods:

(a)   The franchise fee during the one-year period, commencing on September 26, 1993       , shall be five percent (   5 %).

(b)   Franchisee shall pay a $3,000.00 security deposit upon execution of this Agreement.

2.   Franchisee, his agents, servants, employees, and all persons who are or may come under his control, agree to abide by all AAMCO procedures and policies in the operation of the Repair Center, including but not limited to the transmission service procedures as set forth in the AAMCO Service Program, the prior receipt of which is hereby acknowledged by Franchisee.

3.   Franchisee, his agents, servants, employees, and all persons who are or may come under his control, agree to abide by the terms and conditions of the FTC Consent Order in the operation of the Repair Center, the prior receipt of a copy of the Order is hereby acknowledged by Franchisee.

4.   Franchisee agrees to mail to AAMCO every week, in a timely manner, an accurate report showing all the gross receipts received by him during the preceding calendar week, together with the required repair orders, and to pay AAMCO the required franchise fees as they become due, as set forth herein and in the Franchise Agreement attached as Exhibit A.   Franchisee also agrees to participate in and to pay all local advertising pool obligations on a current basis.

5.   Franchisee acknowledges that this one-year license Agreement is subject to the following conditions:

(a)   The Agreement is for a one-year period only, and Franchisee specifically acknowledges that such Agreement does not confer, nor is it intended to confer upon Franchisee, any right to a 14-year renewal or any renewal at the end of the one-year trial period.

92-1 (1) Renewal                            2

(b)   At the end of the one-year trial period, AAMCO shall have the sole discretion in determining whether Franchisee's conduct as determined in accordance with paragraph 5(c), justifies the granting of a 14-year renewal, or whether additional one-year trial periods or a multi-year trial period is required.

(c)   Whether the relationship shall be continued beyond any trial period or periods shall be determined by AAMCO by reference to Franchisee's conduct both during the trial period or periods and the entire period prior thereto. Franchisee acknowledges and agrees that good cause for not renewing the relationship shall be determined by reference to such total conduct, and that good cause shall exist for not renewing if AAMCO, in its sole discretion, determines that its trademark, reputation or business interests would be jeopardized or compromised in any manner because of Franchisee's continuance as a franchisee after the trial period or periods, based on AAMCO's review of Franchisee's total conduct.   In this regard, Franchisee specifically agrees that although his conduct during the trial period or periods may not itself constitute good cause for failing to renew the relationship, good cause is to be determined by reference to his conduct during the trial period or periods in conjunction with and in relation to his prior conduct, and that a determination based on such total conduct that gives AAMCO inadequate assurance of Franchisee's performance in the future for any reason constitutes good cause for not renewing the rela-tionship.

(d)   If AAMCO has not had sufficient time during any one-year period or any multi-year period to assess Franchisee's performance during the trial period and fails to notify Franchisee of AAMCO's intent as to what action AAMCO will take at the end of any one-year period or multi-year period, then this Agreement shall automatically renew itself for the limited period of one year.   Any failure by AAMCO to give such notice shall not prevent AAMCO from giving notice in the next trial period, and the provisions of Paragraph 5(c) as to what constitutes good cause shall apply to AAMCO's determination in any second or subsequent trial period with the exception that AAMCO's determination shall be made based on Franchisee's performance during such trial period in relation to and in conjunction with his performance during any previous trial period and his performance prior thereto.

(e)   Exhibit A attached to this Agreement confers no rights upon Franchisee whatsoever, it being acknowledged by

Franchisee that only this one-year Agreement establishes the rights between the parties, and that Exhibit A establishes only the AAMCO policies and procedures to which Franchisee's conduct must conform and the terms and conditions governing the franchise relationship which are not otherwise set forth in this Agreement. Exhibit A does not grant, nor is it intended to grant, a license or a franchise to Franchisee, whether for a 15-year period or otherwise.  Any and all terms of Exhibit A that are contrary to or inconsistent with the terms of this Agreement are hereby superseded in their entirety, specifically including but not limited to the provisions in Exhibit A that purport to grant a license or a franchise or to provide for renewal terms thereof, the parties agreeing that these terms in particular are specifically provided by the terms of this Agreement.

(f)   If AAMCO declines to renew this one-year Agreement, or any additional one-year periods or multi-year renewal period, Franchisee shall comply with the post-termination provisions of Exhibit A commencing on the day following the date of expiration of the one-year or multi-year term.

6.   At the conclusion of the trial period or periods, if AAMCO determines that Franchisee is acceptable, then Franchisee will be given a Franchise Agreement that incorporates the provisions of Exhibit A; provided however, that the length of such Franchise Agreement will not be for the usual 15-year renewal period, but will be for a period of time ending on the fifteenth year from the date that the first trial period commenced.

7.   Franchisee acknowledges that because AAMCO has given proper notice of its intent not to renew the prior Franchise Agreement, and AAMCO is willing to give Franchisee a trial period within which to determine if Franchisee would be acceptable as a full 15-year renewing franchisee, Franchisee specifically waives any right he may have to any statutory notice that AAMCO might otherwise be required to give at or near the end of any trial period involved with Franchisee, and specifically agrees that notice of AAMCO's decision as to Franchisee's continuance may be given not less than thirty (30) days prior to the end of any scheduled trial period.  Franchisee also agrees that AAMCO's failure to give such notice shall cause the license agreement then in effect to be continued for a one-year period only, notwithstanding the fact that the trial period provided by such agreement may be a multi-year trial period.

8.   During the one-year period and any subsequent trial periods, Franchisee shall have the right to sell his center in accordance with the provisions of paragraph 15.2 of Exhibit A. The terms of such 15-year agreement shall be those of the current franchise agreement then being used by AAMCO, and not those of Exhibit A.

9.   The parties agree that all of Sections 21 and 22 of Exhibit A shall apply to this Agreement.

10.   This Agreement shall be binding upon and shall inure to the benefit of the heirs, executors, administrators, successors and assigns of the parties hereto, but nothing in this paragraph shall be construed as a consent to any assignment of the rights and duties set forth in this Agreement.

11.   Any and all notices and other communications requested or permitted under the Agreement or by law, served or given to either party hereto, shall be in writing and shall be deemed served when deposited in the United States Mail, first class, postage prepaid and addressed as follows:

         TO:   AAMCO TRANSMISSIONS, INC.
               c/o William Shnycer
               One Presidential Boulevard
               Bala Cynwyd, PA   19004


         TO:   James M. Dunlap
               4117 Portsmouth Blvd.
               Portsmouth, VA 23701


         IN WITNESS WHEREOF, the parties hereto have set their hands and seals on the date set forth above.

ATTEST:                          AAMCO TRANSMISSIONS, INC.

                                 By: _____

_____          X_____ (SEAL)
WITNESS                          FRANCHISEE - James M. Dunlap

92-1 (1) Renewal                      5

AMENDMENT TO FRANCHISE AGREEMENT

WHEREAS, James M. Dunlap                          ("Franchisee")
has entered into a Franchise Agreement with AAMCO Transmissions, Inc. ("AAMCO"),
dated November 29, 1993                          for a center located at
4117 Portsmouth Boulevard, Portsmouth, Virginia 23701

WHEREAS, Franchisee, pursuant to a Franchise Agreement(s) dated
June 5, 1981            , is already the owner/operator of an AAMCO center(s)
located at 1366 S. Military Highway, Chesapeake, VA 23320            ;

WHEREAS, AAMCO and Franchisee wish to amend all Franchise Agreements
presently existing between them and all amendments thereto must be in writing.

NOW, THEREFORE, for and in consideration of the mutal premises and
covenants contained herein, and for other good and valuable consideration, the
receipt and sufficiency of which are hereby acknowledged, the parties hereto,
intending to be legally bound hereby, agree as follows:

1.  All existing Franchise Agreements between AAMCO and Franchisee are
amended to include the following:

Franchisee acknowledges and agrees that should any of the
AAMCO centers operated by Franchisee close or cease operation
for any reason, then all intershop work done on vehicles
originally serviced at the closed center become the obligation
of the remaining center(s) and will be honored by the remaining
center(s) as though the work was originally performed by that
center(s); Franchisee further agrees to pay for any such intershop
work as though it were an obligation of the remaining center(s).

2.  All of the terms of the Franchise Agreements as amended shall
remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals
this   29th          day of November                , 19 93            .

Attest:                               AAMCO TRANSMISSIONS, INC.

_____               _____
Assistant Secretary

Witness:

_____               X_____
                                      FRANCHISEE - James M. Dunlap

## AMENDMENT TO FRANCHISE AGREEMENT

WHEREAS, James M. Dunlap                              ("Franchisee")
has entered into a Franchise Agreement with AAMCO Transmissions, Inc. ("AAMCO"),
dated     June 5, 1981                              for a center located at
1366 S. Military Hwy., Chesapeake, VA 23320

WHEREAS, Franchisee, pursuant to a Franchise Agreement(s) dated
November 29, 1993        , is already the owner/operator of an AAMCO center(s)
located at  4117 Portsmouth Blvd., Portsmouth, VA 23701                              ;

WHEREAS, AAMCO and Franchisee wish to amend all Franchise Agreements
presently existing between them and all amendments thereto must be in writing.

NOW, THEREFORE, for and in consideration of the mutal premises and
covenants contained herein, and for other good and valuable consideration, the
receipt and sufficiency of which are hereby acknowledged, the parties hereto,
intending to be legally bound hereby, agree as follows:

1.  All existing Franchise Agreements between AAMCO and Franchisee are
amended to include the following:

Franchisee acknowledges and agrees that should any of the
AAMCO centers operated by Franchisee close or cease operation
for any reason, then all intershop work done on vehicles
originally serviced at the closed center become the obligation
of the remaining center(s) and will be honored by the remaining
center(s) as though the work was originally performed by that
center(s); Franchisee further agrees to pay for any such intershop
work as though it were an obligation of the remaining center(s).

2.  All of the terms of the Franchise Agreements as amended shall
remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals
this      29th      day of   November            , 19 93         .

Attest:                                      AAMCO TRANSMISSIONS, INC.

_____                      _____
Assistant Secretary

Witness:

_____                      X _____
                                             FRANCHISEE ← James M. Dunlap

ADDENDUM TO FRANCHISE AGREEMENT

Section 13.1 is stricken in its entirety and the following is added:

### 13.1  SECURITY DEPOSIT

Franchisee agrees to deposit with AAMCO weekly, along with his weekly business reports and franchise fees, an amount as security for compliance with all the provisions of this Agreement. The amount of these deposits shall be a sum equal to 2% of the gross receipts for the preceeding week from Franchisee's center.  This deposit shall be retained by AAMCO and AAMCO shall have the right to reimburse itself or others, including customers of Franchisee's center, from this account for any damages which may be sustained by AAMCO or others, as a result of failure by Franchisee to comply with any provision of this Agreement. AAMCO has sole and absolute discretion in determining the amount of reimbursement from this account, and agrees to act reasonably in making such determinations.

It is agreed that AAMCO shall retain the above specified security deposit payments until the amount in the account reaches and remains at the sum of Three Thousand Dollars ($3,000.00) for the first three years of the term of this Agreement.  At the end of the first three years of the term of this Agreement, provided Franchisee is not then in default hereunder, the total balance remaining in said account will be refunded to Franchisee at the end of the next succeeding calendar quarter year.  In the event Franchisee defaults during the first three year period or in the event the Franchisee defaults after the aforesaid three year period, AAMCO shall retain, from the date of notice of such default, the succeeding security deposit payments from Franchisee until the sum of Three Thousand Dollars ($3,000.00) is accumulated, which shall then be held by AAMCO for three years after notice by AAMCO to Franchisee of the default, to insure against further defaults.

Any amount remaining in the said account above the sum of $3,000.00 shall be refunded to the Franchisee within forty-five (45) days after the close of the next succeeding calendar quarter.

Franchisee acknowledges that the creation and use of this account is a condition of the franchise and is intended to maintain a high level of customer satisfaction and to minimize or resolve customer complaints.  It is agreed that AAMCO may use the funds to cure any default by Franchisee under this Agreement and to defray expenses, damages or attorneys' fees of AAMCO or others, reasonably necessary to cure any such default, incluidng refunds to customers of Franchisee as AAMCO may determine.  AAMCO may send written notice to

Franchisee of defaults calling for action under these provisions to Franchisee's last known address.  Franchisee hereby authorizes AAMCO to apply the money in this account for the purposes specified in this provision without prior, actual notice to Franchisee that the money has been applied.

IN WITNESS WHEREOF, the parties have executed this Addendum as of the date set forth below.

DATED: _November 29, 1993_

AAMCO TRANSMISSIONS, INC.

ATTEST: _____

By: _____

_____
Witness

Franchisee - James M. Dunlap

_____
Witness

Franchisee - _____

12/86

## AMENDMENT TO FRANCHISE AGREEMENT

WHEREAS,   James M. Dunlap                    ("Franchisee")
has entered into a Franchise Agreement with AAMCO Transmissions, Inc. ("AAMCO"),
dated November 29, 1993   for a center located at 4117 Portsmouth Blvd.,
Portsmouth, VA 23701

WHEREAS, Franchisee, pursuant to a Franchise Agreement(s) dated
June 5, 1981
is already the owner/operator of an AAMCO Transmission center(s) located at
1366 S. Military Hwy., Chesapeake, VA 23320

WHEREAS, AAMCO and Franchisee wish to amend all Franchise Agreements
presently existing between them and all amendments thereto must be in writing.

NOW, THEREFORE, for an in consideration of the mutual premises and
covenants contained herein, and for other good and valuable consideration, the
receipt and sufficiency of which are hereby acknowledged, the parties hereto,
intending to be legally bound hereby, agree as follows:

1.  All existing Franchise Agreement(s) between AAMCO and Franchisee
are amended to included the following:

> Franchisee acknowledges and agrees that should he be
> found to be in breach of one of his Franchise Agreements.
> which breach is based, in whole or in part, upon the
> fraudulent acts of Franchisee or on Franchisee's failure
> to deal honestly and fairly with AAMCO or with any customer
> of the Repair Centers, that breach shall be deemed to be a
> breach of all Franchise Agreements between Franchisee and
> AAMCO and shall constitute sufficient grounds and good cause
> to terminate all such Franchise Agreements, it being
> specifically acknowledged that such breach will cause AAMCO
> irreparable injury to its trademark and trade name.

2.  All of the terms of the Franchise Agreements as amended shall
remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals
this    29th   day of   November        19 93 .

Attest:                                   AAMCO TRANSMISSIONS, INC.

_____                   _____
Assistant Secretary

Witness:                                  _____
                                          X
_____                   Franchisee - James M. Dunlap

Witness:

_____                   _____
                                          Franchisee -

## AMENDMENT TO FRANCHISE AGREEMENT

WHEREAS,   James M. Dunlap                          ("Franchisee")
has entered into a Franchise Agreement with AAMCO Transmissions, Inc. ("AAMCO"),
dated   June 5, 1981        for a center located at 1366 S. Military Hwy.,
Chesapeake, VA 23320

WHEREAS, Franchisee, pursuant to a Franchise Agreement(s) dated
November 29, 1993
is already the owner/operator of an AAMCO Transmission center(s) located at
4117 Portsmouth Blvd., Portsmouth, VA 23701

WHEREAS, AAMCO and Franchisee wish to amend all Franchise Agreements
presently existing between them and all amendments thereto must be in writing.

NOW, THEREFORE, for an in consideration of the mutual premises and
covenants contained herein, and for other good and valuable consideration, the
receipt and sufficiency of which are hereby acknowledged, the parties hereto,
intending to be legally bound hereby, agree as follows:

1.  All existing Franchise Agreement(s) between AAMCO and Franchisee
are amended to included the following:

Franchisee acknowledges and agrees that should he be
found to be in breach of one of his Franchise Agreements.
which breach is based, in whole or in part, upon the
fraudulent acts of Franchisee or on Franchisee's failure
to deal honestly and fairly with AAMCO or with any customer
of the Repair Centers, that breach shall be deemed to be a
breach of all Franchise Agreements between Franchisee and
AAMCO and shall constitute sufficient grounds and good cause
to terminate all such Franchise Agreements, it being
specifically acknowledged that such breach will cause AAMCO
irreparable injury to its trademark and trade name.

2.  All of the terms of the Franchise Agreements as amended shall
remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals
this  29th     day of   November     1993 .

Attest:

_____
Assistant Secretary

Witness:

_____

Witness:

_____

AAMCO TRANSMISSIONS, INC.

_____

X _____
Franchisee -  James M. Dunlap

_____
Franchisee -

___Norfolk  VA_____   AAMCO Dealers Advertising Pool
c/o AAMCO Transmissions, Inc.
One Presidential Boulevard
Bala Cynwyd, Pennsylvania 19004

Gentlemen:

   Please accept this letter as evidence of my commitment to the requirement
that I, as an AAMCO franchisee, participate in and cooperate with my local
advertising pool and program.

   **A.**  I acknowledge that advertising is necessary to the successful operation
       of my business as an AAMCO dealer.

   **B.**  I acknowledge that advertising by other AAMCO dealers within my
       marketing area directly benefits my AAMCO center.

   **C.**  I acknowledge the legal, business and other responsibilities to
       approve, cooperate and participate in the advertising program
       established by the other AAMCO dealers in my marketing area, as such
       programs are approved by AAMCO Transmissions, Inc.

   **D.**  I agree that should I be in default of any money due my local AAMCO
       Dealers Advertising Pool, or should I fail to participate in an
       advertising program and make payment for it, I shall be subject to a
       delinquency charge and pay interest at the highest contract rate
       permitted by law to be computed in addition to my actual billing, plus
       any legal and attorney's fees incurred in the event suit must be
       commenced against me because of a violation of this Agreement.

   **E.**  I agree that I will submit any and all information required to administer
       the local AAMCO dealers advertising program in my area and will submit
       such information to the group authorized to administer the local
       advertising program.

   **F.**  It is further agreed and understood by and between me and the
       __Norfolk, VA_____   AAMCO Dealers Advertising Pool
       that I contract for a period equal to the duration of my Franchise
       Agreement with AAMCO and any renewals thereof, to participate in and to
       be responsible for the payment of advertising on this local level as
       determined by my advertising pool.  I acknowledge that the benefit that
       I am deriving and will derive from participating in local advertising
       and my concurrent responsibility for payment of my share of local
       advertising shall begin at the end of the first full week after the
       actual opening of my AAMCO center.  I further agree to execute any
       agreements presently in use by said local AAMCO Dealers Advertising
       Pool.  The amount of payment for such advertising shall be as follows:

     **1.**  Existing percent or flat rate formula, if applicable - $700/week
     **2.**  Existing minimum weekly contribution
     **3.**  Existing maximum weekly contribution

**G.** I acknowledge that the above amount(s) may be changed by the local AAMCO Dealers Advertising Pool according to its standard procedure and I agree to be bound by any such change(s).

**H.** To secure my responsibility to make the necessary payments for an initial period of two (2) years, I hereby agree to execute a Note, secured with the appropriate collateral, and including an acceleration clause for payment in the event of a default, to be paid on a monthly basis to enforce my financial responsibility under the terms of this Agreement.  The Note is to be drawn under the appropriate requirements of my local jurisdiction and is to be made in favor of my AAMCO Dealers Advertising Pool.  I acknowledge that the two-year period of the Note in no way affects my 15-year obligation under the Franchise Agreement in regard to all aspects of local advertising, including payment therefor.  If requested to do so, I further agree to execute additional Notes payable to my local AAMCO Dealers Advertising Pool to secure the remaining years of my local advertising obligation.

I further agree to continue to participate in the local AAMCO Dealers Advertising Pool for the duration of my Franchise Agreement.

Date  November 29, 1993

Franchisee - James M. Dunlap

_____
Franchisee

AAMCO Dealers Advertising Pool

By: _____
Authorized Representative

TO:     AAMCO Transmissions, Inc.
One Presidential Boulevard
Bala Cynwyd, PA   19004

     I hereby subscribe to the AAMCO Tech Video Library.   I agree to purchase all tapes in the current library at a cost of $_____N/A_____, payable at the rate of $_____N/A_____ per month for _____N/A_____ months.   Furthermore, I agree to purchase new tapes as they are made available and to pay for them at $ 35.00_____ per tape/perxxmonth.   I also agree to continue this subscription for the duration of my franchise unless I decide to participate in a comparable technical training program which meets AAMCO's specifications, at which time this subscription shall be ended.

x _____
Franchisee – James M. Dunlap

Dated:_____NOV 2 9 1993_____ 1993

(6/91)

# AAMCO TRANSMISSIONS, INC.
## Franchise Agreement

This Agreement has been entered into this                     day of                     19          at Bala Cynwyd, Pennsylvania between AAMCO Transmissions, Inc., a Pennsylvania corporation having its principal office in Bala Cynwyd, Pennsylvania, referred to as "AAMCO", and

referred to as "Franchisee".

AAMCO has developed methods, techniques and systems for the operation of centers devoted exclusively to transmission repair. AAMCO has built up substantial business and valuable good will by the establishment of such centers throughout the United States and in Canada.

AAMCO makes its experience and know-how available to all its franchisees in order to assist them in opening and operating a successful AAMCO center. AAMCO makes this and other means at its disposal available to aid in the management and merchandising of Franchisee's center.

Franchisee acknowledges that he does and will have full managerial responsibility and authority for the operation of his center; he recognizes that his success, and that of all AAMCO centers, depends on adherence to the highest standards of business practice and on the maintenance of prompt, efficient, courteous and satisfactory service to the public.

Franchisee acknowledges that he has conducted a thorough and independent investigation and based on that investigation, Franchisee desires to enter into the business of operating an AAMCO center, and to develop the market to its full potential in his locality.

The parties enter into this Agreement in recognition of these considerations and of the mutual agreements expressed herein.

**1.1 Franchise.** This Agreement is for the operation by Franchisee of one AAMCO transmission repair center. The location is specified at section 1.2 of this Agreement. This Agreement allows Franchisee to use the trade name and trademark "AAMCO" only upon fulfillment of the following conditions:

(a) Franchisee must secure insurance as required by section 12.1 of this Agreement.

**1.2 Location.** The center shall be located as follows:

During the term of this Agreement, Franchisee shall operate his center at no other address. Franchisee shall not move or relocate his center without the prior written consent of AAMCO.

**1.3 Market.** AAMCO expressly reserves the right to grant additional franchises in the same county or MSA/PMSA. The number of centers will be based upon then current motor vehicle registrations and the marketing program of AAMCO; the number of franchised centers shall be limited to a maximum of one center for each 100,000 motor vehicle registrations.

**2.1 Trademark.** Franchisee acknowledges that AAMCO is the owner of valid trademarks and service marks using the mark "AAMCO". Franchisee expressly agrees not to register the word "AAMCO" as part of his firm or corporate name.

**3.1 Franchise Fee.** Starting with                                         , Franchisee agrees to pay a weekly franchise fee to AAMCO of                                         of the gross receipts of the preceding week. "Gross receipts" shall mean all forms of consideration received for parts or services in the center, including supplies and accessories, regardless of whether for manual or automatic transmissions, whether from wholesale, fleet, commercial or retail business.

**4.1 Business Reports.** Starting with                                         , Franchisee agrees to mail to AAMCO an accurate report of gross receipts received during the preceding week, along with copies of the repair orders for all work completed during the preceding week and such other information or reports as AAMCO may request. These should accompany a check or money order for the amount required under section 4.2, and should be mailed so as to be received no later than Tuesday of each week. Franchisee acknowledges that failure to furnish complete and accurate reports of business on a timely basis deprives AAMCO of the means to control and supervise the use of its marks, or to communicate with members of the motoring public who are customers of AAMCO's franchisees. In addition to an accurate report of gross receipts on the forms prescribed by AAMCO, business reports shall also consist of all home office copies of repair order forms used in the center during the reporting period which shall be attached to the prescribed form.

**5.1 General Policies.** Franchisee agrees that for the term of this Agreement he shall give his personal loyalties to the goals of the AAMCO chain in order to enhance the growth of AAMCO's national identity, the reputation of AAMCO as a specialist in the transmission field, and the quality of repairs associated with the name AAMCO.

AT-93-10 (1) Renewal                                         1

Exhibit "A"

Franchisee agrees that, regarding the hiring of employees for his center, he will not initiate directly or indirectly any contact with any other person known to him to be employed by another AAMCO franchisee for the purpose of inducing such employee to work in Franchisee's center; provided, however, nothing shall prevent Franchisee from advertising generally for employees to fill vacant positions. Franchisee agrees to hire only those employees who, upon appropriate screening, demonstrate themselves to be honest and dependable. Franchisee specifically agrees that any customer service manager employed in his AAMCO center must satisfy AAMCO's training and/or retraining requirements, including attendance at and successful completion of AAMCO's CSM training.

5.2 **Performance Standards.** Except as otherwise approved in writing by AAMCO, which approval shall not be unreasonably withheld, Franchisee agrees that during the period of this Agreement he will devote his full time, energy and effort to the operation of his center, and agrees not to engage in any other business either at the location of his center or at any other location.

Franchisee agrees that he will comply with all of the policies and procedures which AAMCO establishes from time to time including those set forth in AAMCO's training manuals, as modified and/or updated from time-to-time as determined by AAMCO in its sole discretion.

Franchisee acknowledges that AAMCO has the right to visit and enter the center at reasonable times, for the purpose of inspecting the center, its equipment and inventory, and to determine the nature and quality of the service rendered there, including the manner and method of the center's operation by Franchisee. Franchisee specifically agrees that neither his physical presence in the center nor his specific consent to the inspection shall be necessary.

Franchisee acknowledges that any customer complaints cause harm to the growth of AAMCO's national identity, reputation in the marketplace and association of its name with quality repairs. Franchisee agrees that any customer complaints generated by his center, including but not limited to those in which customers allege abuse, fraud, deceptive or unfair trade practices, cause such harm individually and in the aggregate. Franchisee agrees to operate his center in such manner so as to avoid customer complaints. Franchisee agrees that he will deal fairly and honestly with AAMCO and with each customer, and that he will render prompt, workmanlike, courteous and willing service in his center. Franchisee agrees to handle all customer complaints and adjustments in the same fashion whether they arise from his center or from any other AAMCO center. Franchisee specifically agrees to conduct his center in a manner so that it will not detract from nor bring into disrepute the trademark or name "AAMCO".

All personnel whom Franchisee employs shall conform to the experience or skill standards which AAMCO may prescribe. Franchisee further agrees to attend such meetings and training sessions as AAMCO may require, including obtaining technical certification pursuant to AAMCO's technical certification program or a comparable technical certification program which complies with AAMCO's specifications, and to direct any of his employees to attend such meetings and training sessions and obtain such certifications as AAMCO may require.

In his operation of his center, Franchisee agrees to use only such forms as AAMCO specifically prescribes or authorizes including, without limitation, AAMCO multi-check, AAMCO repair order, AAMCO warranty cards and AAMCO reporting forms.

Franchisee agrees to offer to customers of his center all services, products and/or warranties which AAMCO may prescribe. Franchisee acknowledges that AAMCO retains the exclusive right to make modifications from time-to-time to such services, products and/or warranties.

5.3 **Appearance Standards.** Franchisee agrees to keep his center's premises in a clean, wholesome, attractive and safe condition, and to keep it in good maintenance and repair. Franchisee agrees to maintain the interior and exterior painting and decor, and furnishings of his center in such a manner and form as may be required by AAMCO. Franchisee agrees to purchase and display in or about his center only the signs, logos or other materials which are required or approved by AAMCO.

5.4 **Maintenance Standards.** Franchisee recognizes that it is in the mutual interests of both parties to this Agreement that the AAMCO center he operates be equipped and maintained in accordance with the highest standards of quality, and Franchisee specifically agrees to follow the directions of AAMCO in this regard, subject to the observance of any applicable laws.

5.5 **Non-Disclosure.** Franchisee agrees that he will not furnish any information concerning AAMCO's service program, training, diagnostic and technical materials, operations techniques, advertising or promotion ideas, or concerning the financial status of AAMCO to anyone; provided, that nothing in this section shall prevent the use of these materials or of this information by employees in Franchisee's AAMCO center.

Franchisee acknowledges that AAMCO is the sole owner of all rights to the AAMCO service program, and of all books, manuals or documents provided to Franchisee for the operation of his center.

Franchisee recognizes that AAMCO has expended substantial funds and effort in the development of its service program, training, diagnostic and technical materials, and operating techniques, and he specifically agrees not to engage in competition with AAMCO using any training or policy manuals, catalogues, lists, forms or aids provided by AAMCO.

6.1 **Obligations of AAMCO.** AAMCO agrees that before AAMCO grants any additional franchise in the county or MSA/PMSA in which Franchisee is located, it will conduct a marketing study and will receive and consider input and comments from Franchisee.

AT-93-10 (1) Renewal                                 2

AAMCO agrees to assist Franchisee by providing Technical Consulting services for use by all franchisees. These services shall include Technical Hot Line Department, Publication of Technical Advisory bulletins, Publication of Technical Bench tips, Publication of Technical Bench notes, Publication of Technical column in the Twin Post, Production of video training films, the availability of the Rebuilders Academy and additional in-house only training seminars. AAMCO further agrees that the ratio of the Technical Department's expenditures to franchisee fee revenue for the provision of said services will be the minimum ratio maintained for the provision of these services. AAMCO further agrees to assist Franchisee by providing limited operations consulting services to all franchisees.

AAMCO agrees that it will assist in the design of advertising promoting the business of AAMCO franchisees and the services they sell. AAMCO agrees to make available to Franchisee its experience, know-how, guidance, and counseling with respect to national, regional, and local advertising, and combinations thereof, including the selection of particular media and advertising content, as well as the choice of agencies for the purchase and use of these advertising techniques.

AAMCO agrees to sell to Franchisee during this Agreement the quantities of those AAMCO products mentioned in the Appendix A of this Agreement, as Franchisee wishes from time to time to order subject to AAMCO's standard credit approval; provided, however, that AAMCO may at any time in its own discretion discontinue the sale of any product or products, if in AAMCO's opinion it is unprofitable, not feasible, or otherwise undesirable to continue such products.

7.1   **National Creative Advertising.**   Franchisee agrees to pay his proportionate share of "National Creative Advertising" in accordance with the formulas which will be provided by the National Creative Committee and administered by AAMCO. Payment for National Creative Advertising shall be made to AAMCO in accordance with its instructions.

7.2   **Local Advertising.**   Franchisee acknowledges and agrees that all advertising must be approved by AAMCO in advance of its use and Franchisee agrees not to use any advertising unless and until its content is approved in writing by AAMCO.

Franchisee specifically agrees to participate in and pay for the national Yellow Pages program of AAMCO and agrees not to place Yellow Pages advertising in any other manner.

Franchisee acknowledges that, in addition to Yellow Pages advertising, it is mandatory to employ advertising at the local level and to participate in and pay for advertising programs and promotional activities at the local level. Franchisee specifically agrees to establish and adhere to a local advertising budget, subject to AAMCO's approval.

Franchisee further agrees to share local advertising expenses with other franchisees in the Area of Dominant Influence (ADI) as defined by Arbitron which may change from time-to-time. If Franchisee's AAMCO center is not part of an ADI or is the only AAMCO center in an ADI, Franchisee agrees to share local advertising with other franchisees in related or adjoining ADIs if coverage from local advertising in the related or adjoining ADIs permeates within Franchisee's market or if directed by AAMCO.

Franchisee acknowledges that AAMCO has the right to approve an advertising agency, which approval shall not be unreasonably withheld, and Franchisee agrees to place advertising only with an agency approved by AAMCO; Franchisee agrees to pay promptly fees which become due to any such agency.

If Franchisee fails to pay promptly an amount due his advertising agency or his local advertising group or pool, then either AAMCO, or other AAMCO franchisees in the local advertising group or pool of which Franchisee is a member, or the local advertising group or pool shall be entitled to recover the amount due from Franchisee. Franchisee acknowledges that all local advertising benefits him and the other franchisees in the local advertising group or pool. Franchisee acknowledges that despite failure to contribute to his local AAMCO advertising group or pool, local advertising expenditures by such group or pool confer substantial benefits on him, and further acknowledges his responsibility for payment therefor.

AAMCO specifically reserves the right to have or allow the local AAMCO advertising group or pool seek enforcement of this obligation.

7.3   **National Advertising.**   Franchisee agrees to participate in advertising programs at the national level if established or directed by AAMCO. Franchisee agrees to pay his proportionate share of "National Advertising" and publicity in accordance with reasonable formulas provided by AAMCO. Payment for National Advertising billings and costs shall be made in accordance with AAMCO's instructions.

8.1   **Signs.**   Franchisee agrees to erect in and outside of his center only such signs as are approved by AAMCO. No other signs regardless of content, size or construction may be erected or used.

**9.1 Standards and Specifications for Equipment and Inventory.** AAMCO shall fix and determine all standards, specifications and requirements for the equipment, including diagnostic and technical equipment, supplies, parts, and assembly sets used by Franchisee in his AAMCO center. Franchisee may purchase these items from any source, as long as they conform to these standards and specifications. AAMCO agrees to furnish these standards and specifications to Franchisee, or to a vendor or manufacturer, without charge.

Franchisee acknowledges that AAMCO may change such standards, specifications and requirements from time-to-time, and agrees to make any additional purchases of equipment and/or supplies needed to comply with such updated requirements.

**9.2 Equipment, Supplies and Inventory.** If Franchisee requests to purchase equipment, supplies and inventory from AAMCO, AAMCO agrees to supply them at the price then in effect; provided, that if prior to delivery the price to AAMCO shall increase, then AAMCO may proportionately increase the price to Franchisee. If any item is not available at the time of request, then AAMCO may substitute merchandise of a similar quantity, and adjust the price, after notice to Franchisee.

**9.3 Operating Inventory.** Franchisee acknowledges that the consumer acceptance, quality, and standardization of parts and assembly sets sold by AAMCO, and agrees that the use exclusively of parts and assembly sets sold by AAMCO (or parts and assembly sets which comply with AAMCO's specifications) is an essential condition of the performance of this Agreement. Franchisee agrees to purchase exclusively parts and assembly sets sold by AAMCO (or parts and assembly sets which comply with AAMCO's specifications). At the request of AAMCO, Franchisee will submit a certification that he uses parts and assembly sets which comply with AAMCO's specifications. Further, Franchisee agrees that at the request of AAMCO he will submit information about the purchase of his parts and assembly sets, including without limitation, invoices, lists of vendors and manufacturers from whom Franchisee purchases, and actual parts and assembly sets for testing and examination. AAMCO in its discretion shall determine what information is necessary in order to perform such testing or examination.

Franchisee acknowledges and agrees that the training of his technical employees is essential to the successful operation of his Center. Franchisee, therefore, agrees to participate in and pay for the AAMCO Tech Video Library Program according to the terms and conditions as determined by AAMCO, or to participate in a comparable technical training program which complies with AAMCO's specifications. Franchisee further agrees that at the request of AAMCO he will submit information about his participation in a comparable technical training program, including without limitation, invoices, lists of vendors from which Franchisee purchases such technical training programs and actual copies of such training. AAMCO's Technical Services Department shall determine if any such technical training program is comparable.

**9.4 Product Warranties.** There are no warranties, express or implied, made by AAMCO under this Agreement for the products purchased by Franchisee, including the implied warranty of MERCHANTABILITY.

**10.1 Warranty Program.** Franchisee agrees to honor each warranty presented by an AAMCO customer in accordance with its terms, regardless of whether the service was rendered at his center or at some other authorized AAMCO center. Franchisee agrees to comply at all times with AAMCO's policies concerning the AAMCO warranty program.

**10.2 Warranty Payment Rates.** Franchisee shall be entitled under this Agreement to receive from another AAMCO center the costs of supplies, accessories and parts which Franchisee uses in honoring the warranty, plus a sum of money based on either an hourly rate for labor, or a flat fee, depending on the extent of repairs required. The payment rate used in making payments under this section will be determined by AAMCO and published to all franchisees.

Franchisee agrees to pay within ten (10) working days to any other AAMCO center the amount due to such other center for the honoring of a warranty issued to a customer of Franchisee. If Franchisee fails to pay promptly any amount due under this section, AAMCO shall be entitled to recover such amount from Franchisee for the benefit of the other AAMCO center, or to credit such other center for money which may be due and owing to Franchisee for such payments.

**10.3 Prohibition Against Other Warranties.** Franchisee agrees to make no warranties or guarantees other than those contained in the printed forms of warranty issued or approved by AAMCO, which warranty is made by Franchisee to the customer and not by AAMCO either to any customer or to Franchisee. There are no warranties expressed or implied made by AAMCO to the customer in connection with any product or service furnished by AAMCO under this Agreement.

**11.1 Accounting Forms.** Franchisee agrees to keep true and correct books and records according to directions of AAMCO, and to employ such record keeping systems as AAMCO may request. Franchisee agrees to promptly deliver to AAMCO records, reports and copies of personal and business tax returns which AAMCO may request. Franchisee agrees to use exclusively numerically certified work or repair orders provided by AAMCO. Franchisee agrees to furnish to AAMCO bank deposit slips, verification of cash receipts and any other documents or information requested by AAMCO.

**11.2 Inspection of Records.** AAMCO's representative may enter Franchisee's center to inspect books and records to verify the accuracy of Franchisee's reports. Franchisee agrees to keep its books and records available in the center at all times, or to make them available there upon request by AAMCO.

11.3   Liquidated Damages.   If it is determined at any time that Franchisee has failed for any reason to report gross receipts to AAMCO, then Franchisee shall pay AAMCO immediately any deficiency in franchise fees together with interest pursuant to section 14.1.  In addition, Franchisee shall pay AAMCO as liquidated damages any and all expenses connected with AAMCO's examination of Franchisee's reporting practices, including but not limited to reasonable administrative, accounting and attorneys' fees and the cost incurred in connection with investigation of Franchisee's recordkeeping and obtaining inspection of his records.  Franchisee further acknowledges and agrees that the actual damages sustained by AAMCO in the event of underreporting of gross receipts are difficult to ascertain and that in addition to the above costs and expenses, Franchisee shall pay AAMCO liquidated damages in the amount of fifty percent (50%) of any underreported gross receipts.  These liquidated damages shall be in addition to any other remedies AAMCO may have.

11.4   Financial Statements.   Franchisee agrees to submit to AAMCO within 60 days after the end of each year a Profit and Loss Statement for the year and a Balance Sheet as of the last day of the year.  In addition, within 60 days after the end of each semi-annual period, Franchisee agrees to submit to AAMCO a Profit and Loss Statement for the previous 6-months and a Balance Sheet as of the last day of the 6-month period.  All statements required by this paragraph may be unaudited but must be prepared by an accountant, and, unless otherwise specified by AAMCO, shall be in accordance with generally accepted accounting principles.  All references in this section to "year" of Franchisee shall mean either calendar or fiscal year, as adopted by Franchisee.

12.1   Insurance.   Franchisee agrees to purchase and maintain at his own expense insurance against all types of public liability, as directed by AAMCO, including but not limited to garage liability, garage keeper's legal liability, garage keeper's direct primary coverage and workers' compensation insurance, including coverage for AAMCO as an additional named insured.  Franchisee acknowledges that AAMCO reserves the right to increase the amounts of insurance coverage required by this section and agrees to comply with any such increased amounts after notice from AAMCO.  In no event shall the amounts of coverage be less than $1,000,000 per occurrence, bodily injury and property damage combined.  Franchisee shall furnish AAMCO with certificates of such insurance including the insurance upon AAMCO, along with satisfactory evidence that premiums have been paid.  Each certificate shall provide that the policy may not be cancelled as to AAMCO without thirty days' prior notice to AAMCO.  Franchisee shall pay AAMCO its costs and expenses, including reasonable attorneys' fees, incurred by AAMCO in connection with any proceedings arising out of this provision.

12.2   Indemnity Agreement.   Franchisee agrees by this Agreement to defend and to hold harmless and indemnify AAMCO from any and all claims, demands or suits of any kind, and to pay to AAMCO all expenses and liabilities which may be associated with such claims, demands or suits, which are based on or arise out of or relate in any way to the operation or the condition of Franchisee's center.  This Agreement to indemnify AAMCO shall be given effect whether the claim arises indirectly or directly out of the center's operation, Franchisee's conduct of his business there, the ownership or possession of real or personal property there or from or by any act of negligence, omission or willful conduct by Franchisee or by any of his employees, servants or agents.  The minimum amounts of insurance outlined in section 12.1 shall not be construed to limit liability under this section of the Agreement.

Franchisee also agrees by this Agreement to pay on behalf of AAMCO any and all fees, costs, or other expenses which AAMCO reasonably incurs as a result of any investigation or defense of any such claim, including reasonable attorneys' fees.

12.3   Independent Contractor.   Franchisee acknowledges that under the terms of this Agreement he is not an agent, employee, or servant of AAMCO for any purpose whatsoever.  Franchisee agrees that he shall not hold himself out as an agent, employee, or servant of AAMCO under any circumstances for any reason whatsoever.  Franchisee is an independent contractor and is not in any way authorized to make a contract, agreement or promise on behalf of AAMCO, or to create any implied obligation on behalf of AAMCO.  Franchisee specifically agrees that he shall not do so.

13.1   Security Deposit.   Franchise acknowledges that he has deposited with AAMCO the sum of $3,000 as security for compliance with all the provisions of this Agreement.  This deposit shall be retained by AAMCO and AAMCO shall have the right to reimburse itself or others, including customers of Franchisee's center, from this account for any damages which may be sustained by AAMCO or others, as a result of failure by Franchisee to comply with any provision of this Agreement.  AAMCO has sole and absolute discretion in determining the amount of reimbursement from this account, and agrees to act reasonably in making such determinations.

Franchisee acknowledges that the creation and use of this account is a condition of the franchise and is intended to maintain a high level of customer satisfaction and to minimize or resolve customer complaints.  It is agreed that AAMCO may use the funds to cure any default by Franchisee under this Agreement and to defray expenses, damages or attorneys' fees of AAMCO or others, reasonably necessary to cure any such default, including refunds to customers of Franchisee as AAMCO may determine.  AAMCO may send written notice to Franchisee of defaults calling for action under these provisions to Franchisee's last known address.  Franchisee hereby authorizes AAMCO to apply the money in this account for the purposes specified in this provision without prior, actual notice to Franchisee that the money has been applied.

Franchisee agrees that should the amount on deposit with AAMCO become less than $3,000 because of any reason whatsoever, then Franchisee, upon notice from AAMCO, shall pay whatever amount is needed so that the amount on deposit equals $3,000.

AAMCO agrees to pay interest on this deposit at the rate of 3% less than prime rate as established by a leading bank as determined by AAMCO averaged over the preceding twelve months to a maximum of six percent (6%) per year, provided that Franchisee is, at all times, in full compliance with the provisions of this section.

14.1  **Defaults in Payment.**   Franchisee agrees to pay all invoices from AAMCO for merchandise or other items under this Agreement in strict accordance with the payment and credit terms applicable to them when they are issued.  Any such amount not so paid when due, as well as any amount due from Franchisee under any section of this Agreement, shall bear interest at the annual rate of eighteen percent (18%), or the legally permissible rate, whichever is less, from thirty (30) days after the due date until payment.  The payment of such interest will not be deemed to allow delay in the payment of those invoices or other invoices or amounts.  Franchisee agrees further to pay when due any bills or other amounts owed to third parties, especially under sections 7.1, 7.2 and 7.3 of this Agreement, or under any other purchasing arrangement in which AAMCO may be involved; but, AAMCO shall not by virtue of such an arrangement become liable to any such third party on the account of Franchisee.

In the event that Franchisee is in default in the payment of any franchise fee, invoice for parts, invoice for advertising, or for any other amount due to AAMCO under the terms of this Agreement, including an amount which may be due to an advertising association, pool, or agency under sections 7.1, 7.2 and 7.3 of this Agreement, then in any and all actions which may be brought for the amount in default, AAMCO or the party bringing such action shall be entitled to recover the amount in default, with any interest thereon at the rate set forth above, and costs of the action, together with reasonable attorneys' fees.  In the event that a local advertising group or pool becomes entitled to recover, by virtue of such an action pursuant to section 7.2 of this Agreement, then Franchisee acknowledges that such group or pool shall also be entitled to recover, in addition to any judgment, an amount equal to the costs and reasonable attorneys' fees therefor.  Franchisee specifically agrees that AAMCO may bring an action on behalf of National Creative Committee to collect amounts due pursuant to section 7.1.

In the event that Franchisee fails to pay for National Creative Advertising and/or Yellow Pages advertising, then Franchisee acknowledges and agrees that AAMCO has the right (1) to direct any publisher of a Yellow Pages advertising directory to omit Franchisee's listing from such directory and (2) to withhold all television and radio tapes from Franchisee, until all sums owed plus interest and any costs of collection, including attorneys' fees, have been paid in full.

15.1  **Assignment.**    This Agreement is a personal obligation of Franchisee and his rights to the use of AAMCO's service marks and trademarks are not assignable nor transferable under any circumstances except in strict compliance with the provisions herein.

(a)  In the event of Franchisee's death, his rights shall pass to his heirs or next of kin on the condition that such heirs or next of kin must immediately attend and successfully complete AAMCO's training course as provided for in this Agreement.  Such person or persons must attend the AAMCO Operator's Training Course by the third class offered after the date of the death of Franchisee.  Failure to do so will result in the termination of all rights conferred under this Agreement.

(b)  If Franchisee, as an individual, desires to transfer his rights under this Agreement to a corporation, he may do so only upon the following terms and conditions:

(1)  Franchisee's name remains on the Agreement and the corporation is added as a co-franchisee on the Agreement.

(2)  The corporation is newly organized and its activities are confined exclusively to acting as an AAMCO franchisee under this Agreement.

(3)  Franchisee is the owner of the majority of the stock of the corporation, is the principal executive officer of the corporation and has full and complete authority to act for the corporation.  In the event of the death of Franchisee who is the majority shareholder of such corporation, then the provisions of section 15.1(a) above will apply, except that such heir or next of kin must be the majority shareholder of the corporation, principal executive officer of the corporation and must have full and complete authority to act for the corporation.

(4)  All money obligations of Franchisee under this Agreement must be satisfied.

(5)  The corporation must sign an agreement with AAMCO assuming jointly and severally all obligations of Franchisee under this Agreement.  It is expressly understood that the assumption of Franchisee's obligation by any corporation does not limit Franchisee's personal obligations under this Agreement and Franchisee and the corporation shall be jointly and severally liable.

(6)  The corporation shall disclose in writing the names and addresses of all of its officers and directors and, whenever there is a change in any such officer or director, shall immediately notify AAMCO of such change.  Franchisee acknowledges that AAMCO has the right to approve the corporation's officers and directors and agrees that any officer and director not approved by AAMCO will be immediately removed from such position and shall not be permitted to have any involvement in the operation of the corporation or the AAMCO center.

(c)  If Franchisee organizes or has organized a corporation in connection with the operation of the center, the capital stock shall not be sold, assigned, pledged, mortgaged or transferred without the prior written consent of AAMCO.  There may be a sale of all of the capital stock of the corportion subject to the same conditions listed in subparagraph (b) above, to a purchaser as though the person acquiring such stock were a purchaser under section 15.2 of this Agreement.  All stock certificates shall have endorsed upon them the following:

The transfer of this stock is subject to the terms and conditions of a Franchise Agreement dated_____19_____ , between AAMCO Transmissions, Inc., and

_____

(d) If Franchisee forms or has formed a partnership for the operation of the AAMCO center, then all partners must sign an agreement with AAMCO assuming jointly and severally all obligations of Franchisee under this Agreement but such agreement does not limit Franchisee's obligations hereunder. A partner cannot sell, assign, pledge, mortgage or transfer his interest without AAMCO's prior written consent.

(e) If Franchisee is a partnership and all partners desire to transfer their rights under this Agreement to a corporation, they may do so only upon the terms and conditions set forth in subparagraph (b) above and provided that one of the partners is the majority stockholder of the corporation, the principal executive officer of the corporation and has full and complete authority to act for the corporation.

(f) Franchisee agrees that this Agreement will not be transferred to a corporation or to an individual by transfer of stock or by any other means.

15.2   **Sale.**   If Franchisee desires to sell his AAMCO center, he may do so provided that the purchaser is first approved by AAMCO, and provided that the purchaser executes AAMCO's then current form of franchise agreement at the fee structure provided below.   AAMCO agrees to approve such prospective purchaser if his credit ratings are satisfactory, he has good moral character and has a reputation and business qualifications satisfactory to AAMCO, and provided further that any and all financial obligations of Franchisee are fully paid and satisfied. The accounts which must be satisfied include sums owed for local, national or national creative advertising, Yellow Pages advertising, sums owed to any advertising agency, sums due AAMCO pursuant to the terms of this Agreement, including any amounts due because of a default of any provision of this Agreement, and any sums due other AAMCO dealers. Franchisee and other person or persons having control of the affairs of a corporate franchisee shall execute a general release of all claims against AAMCO and a termination of franchise, and Franchisee shall pay AAMCO the sum of $2,000 for expenses in connection with the administration and approval of this sale. Ownership of Franchisee's AAMCO center may not be transferred until a purchaser has successfully completed any training course which may be provided for in the then current form of franchise agreement.

(a) If Franchisee sells his AAMCO center without the aid or assistance of AAMCO then the purchaser must sign a current form of franchise agreement. The purchaser has the option of signing an agreement for only the balance of Franchisee's term at the franchise fee being paid by Franchisee; or, if signing an agreement for a fifteen (15) year term, the first portion of the term will be for the balance of Franchisee's term at the franchise fee being paid by Franchisee, and the second portion of the term will be for the remainder of the fifteen (15) year term at the franchise fee being charged by AAMCO for new franchises as of the time of the purchase.

(b) If AAMCO assists Franchisee in the sale of his center, Franchisee has listed his center with AAMCO or the purchaser has received a presentation from AAMCO's franchise sales department, then the purchaser must sign a current form of franchise agreement for a fifteen (15) year term at the franchise fee being charged by AAMCO for new franchises as of the time of the purchase.

15.3   **Attempted Sale, Assignment or Transfer.**   If Franchisee attempts to sell, assign or transfer his AAMCO center without following the procedures required by this Agreement, then any such attempted sale, assignment or transfer is void. In the event that such attempted assignment or transfer is to a corporation wholly or partly owned or controlled by Franchisee, then, at AAMCO's option, Franchisee agrees on behalf of the corporation that the attempted assignment or transfer shall subject the corporation to all the terms and conditions of this Agreement. Franchisee shall remain jointly and severally liable for all obligations and responsibilities of this Agreement, including money owed, despite any such attempted and/or unauthorized sale, assignment or transfer of Franchisee's AAMCO center.

15.4   **Notification of Resale.**   Franchisee agrees to submit to AAMCO a copy of any written offer or a statement from Franchisee of all the terms of the proposed sale and the identity of any proposed purchaser before consummation of an agreement of sale.

16.1   **Duration of the Franchise.**   This Agreement shall begin as of the date set forth above, and shall continue for a term of fifteen (15) years. Unless either party gives written notice of its intention not to renew at least one (1) year prior to the expiration of the fifteen (15) year term, then this franchise shall be renewed for fifteen (15) years. Failure to renew by AAMCO will be based on good cause; the parties agree that "good cause" shall be defined to include the following:

(a) Any default set forth in section 18.1 of this Agreement notwithstanding compliance with paragraph 18.1(b); or

(b) Any cause that in AAMCO's reasonable estimation brings discredit upon its trademarks and trade name, or seriously interferes with AAMCO's business interests.

In connection with any renewal, Franchisee agrees to execute a franchise agreement of the type then currently being used by AAMCO.   AAMCO expressly reserves the right to increase the franchise fee upon renewal in accordance with its then current policy.

17.1   **No Waiver by AAMCO.**   AAMCO's failure to insist upon strict compliance with all provisions of this Agreement, except section 21.1 shall not be a waiver of its right to do so; delay or omission by AAMCO respecting any default shall not affect its rights respecting any subsequent defaults.

**18.1   Termination.**

(a)  AAMCO may terminate this Agreement by giving written notice to Franchisee upon the occurrence of any of the following:

(1)  A breach by Franchisee of sections 5.2 or 20.2 of this Agreement.

(2)  If Franchisee unreasonably delays in opening his center. In no event shall a period of less than eight (8) months be considered an unreasonable delay. In the event that this Agreement is terminated pursuant to this subsection, then AAMCO may elect to retain as liquidated damages the deposit paid by Franchisee pursuant to section 3.1.

(3)  If Franchisee terminates or attempts to terminate this Agreement for any reason. If this Agreement is terminated under this subsection, then AAMCO may elect to retain the deposit made by Franchisee as liquidated damages or as against compensatory and punitive damages which may be sought under this Agreement.

(4)  In the event that Franchisee is declared insolvent or bankrupt by any court, or makes an assignment for the benefit of creditors, or in the event that a receiver is appointed for Franchisee's business, or Franchisee is unable to continue in business, or in the event of the sale, insolvency or termination of the business operated pursuant to this Agreement, or in the event that any proceedings demanded by Franchisee under a provision of the Federal Bankruptcy Act or any other laws for the relief of debtors are commenced, or in the event Franchisee becomes the involuntary subject of any such proceeding, which proceeding continues undismissed for a period of thirty (30) days.

(5)  Failure to make any payments to an advertising agency and/or local advertising group or pool, or to make any other advertising payments required pursuant to section 7 of this Agreement.

(6)  Failure to make any payments required under any provision of this Agreement.

(7)  If Franchisee closes his center for any reason and fails to reopen within ten (10) days from the date of such closing.

(8)  If Franchisee sells or attempts to sell, transfer or assign his rights under this Agreement without the approval of AAMCO as required by this Agreement.

(9)  If Franchisee shall commit a violation of any provision of this Agreement.

(b)  Upon receipt of notice pursuant to section 18.1(a), Franchisee shall have ten (10) days within which to cure completely any default based on a failure to make any payment required under any provision of this Agreement. For any other default, except as set forth below in section 18.1(c), Franchisee shall have thirty (30) days within which to cure completely any such default. Failure of Franchisee to effect such cure within the cure period shall result in the immediate termination of this Agreement. It shall be Franchisee's responsibility to advise AAMCO of his attempt to cure any default.

(c)  Any notice of termination which is based, in whole or in part, upon the fraudulent acts of Franchisee or on Franchisee's failure to deal honestly and fairly with AAMCO or with any customer of the center, shall be effective upon receipt by Franchisee, and the provisions of section 18.1(b) shall not be applicable thereto.

**19.1   Procedures after Termination.**

(a)  Upon the termination of this Agreement for any reason, including, without limitation, termination upon the expiration of the current term by virtue of Franchisee's failure to renew as provided in section 16.1 (sometimes herein called "Expiration"), Franchisee shall cease to be an authorized AAMCO franchisee and shall:

(1)  Promptly pay AAMCO all sums due and owing.

(2)  Promptly pay AAMCO the sum of $5,000 to be held by AAMCO to cover the costs of warranty work for customers of Franchisee's former center. If there is any amount remaining unused two (2) years after the date of termination and Franchisee has complied fully with the provisions of section 19, then any such amount shall be returned to Franchisee.

(3)  Immediately and permanently discontinue the use of the mark AAMCO and all similar names or marks, and any other designation tending to indicate that Franchisee is or was an authorized AAMCO franchisee.

(4)  Promptly surrender to AAMCO all signs, training materials, manuals, videos, stationery, letter-heads, forms, repair orders, printed matter and advertising material containing the mark AAMCO, all similar names or marks or any other designation tending to indicate that Franchisee is or was an authorized franchisee of AAMCO.

(5)  Immediately and permanently discontinue all advertising as an authorized AAMCO dealer.

(6)  Promptly transfer to AAMCO or AAMCO's designee each telephone number listed under the designation AAMCO or any similar designation, and execute such instruments and take such steps as AAMCO may require to accomplish the transfer of each such telephone number.

(7)  At AAMCO's discretion, sell all inventories on hand to AAMCO at the price then being charged by AAMCO to authorized AAMCO dealers, less freight and handling costs.

(b)  Upon termination or Expiration, AAMCO shall have the option to purchase all of Franchisee's right, title and interest in the center and all equipment contained therein. If AAMCO intends to exercise its option, AAMCO shall notify Franchisee of such intention at the time of termination or, in the case of Expiration, within ten (10) days prior to the Expiration of the current term of this Agreement.  The full purchase price of the center shall be:

(1)  In the case of Expiration, the fair market value of the equipment and parts then located at the center, less all outstanding liabilities of the center.

(2)  In the case of all other terminations, the lesser of the fair market value of the equipment and parts then located at the center or Franchisee's cost, less depreciation on the equipment computed on a fifteen (15) year straight-line basis, less all outstanding liabilities of the center.  AAMCO shall have the right to withhold from the purchase price funds sufficient to pay all outstanding debts and liabilities of the center and to pay such debts and liabilities from such funds. If such liabilities exceed the purchase price of the equipment and parts, AAMCO shall apply the purchase price in such manner as AAMCO, in its sole discretion, shall determine.  In no event, however, shall AAMCO become liable for any of the debts and liabilities of Franchisee or of the center and Franchisee shall remain responsible for all outstanding debts and liabilities of the center which remain unsatisfied subsequent to the distribution by AAMCO of the purchase price funds.

(c)  If, within five (5) days after termination or Expiration, Franchisee fails to remove all displays of the AAMCO name and trademark and any other materials of any kind from the center which are identified or associated with AAMCO, AAMCO may enter the center or premises to effect such removal.  In such event, AAMCO shall not have any liability to Franchisee therefor, nor shall AAMCO be accountable or required to pay for such displays or materials.

(d)  If, within three (3) days after termination or Expiration, Franchisee has not taken all steps necessary to amend, transfer or terminate all telephone listings or service and any registration or filing of any fictitious name, Franchisee hereby irrevocably nominates, constitutes and appoints AAMCO or any prothonotary, clerk of court or attorney of any court of record as its true and lawful attorney for him and in his name, and on his behalf to take all such action as may be necessary or appropriate to amend, transfer or terminate all such telephone listings and service and registrations and filings of such fictitious name, without liability to Franchisee for doing so.  In the event that any action is required to be taken by or on behalf of AAMCO pursuant to this subsection 19(d), the telephone company, Yellow Pages publishers and all listing agencies, without liability to Franchisee, may accept this Agreement and the directions by or on behalf of AAMCO as conclusive proof of AAMCO's exclusive rights in such telephone numbers and directory listings and its authority to direct their amendment, termination or transfer and Franchisee hereby releases and waives any claim of any kind that he may have against any telephone company and/or yellow or white page directory publisher as a result of their implementing the transfer, amendment or termination set forth herein.

(e)  The termination or Expiration of this Agreement shall not affect, modify or discharge any claim, rights or causes of action which AAMCO may have against Franchisee, under this Agreement or otherwise, for any reason whatsoever, whether such claims or rights arise before or after termination or Expiration.

19.2  Covenant Not-To-Compete.   Franchisee acknowledges that as a franchisee of AAMCO he will receive confidential information and materials and trade secrets and have access to unique procedures and systems developed by AAMCO.  Franchisee further acknowledges that the development of the marketplace in which his center is located is solely as a result of the AAMCO name and trademark.  Therefore, to protect the AAMCO name and trademark and to induce AAMCO to enter into this Agreement, Franchisee represents and warrants:

(a)  During the term of this Agreement and any renewal thereof, Franchisee shall not directly or indirectly engage in any business the same as, similar to or in competition with AAMCO or any other AAMCO Franchisee, except for the business contemplated by this Agreement.

(b)  For a period of two (2) years after the termination or Expiration of this Agreement, Franchisee shall not directly or indirectly engage in the transmission repair business within a radius of ten (10) miles of the former center or any other AAMCO center.  The two (2) year period shall not begin to run until Franchisee commences to comply with all obligations stated in this section 19.2(b).

(c)  Franchisee acknowledges that because of the business of AAMCO and the strength of the AAMCO name and trademark, the restrictions contained in this section 19.2 are reasonable and necessary to protect the legitimate interests of AAMCO and that any violation of these restrictions will result in irreparable injury to AAMCO.  Therefore, Franchisee acknowledges that, in the event of such violation, AAMCO shall be entitled to preliminary and permanent injunctive relief and damages, as well as an equitable accounting of all earnings, profits and other benefits, arising from such violation, which remedies shall be cumulative and in addition to any other rights and remedies to which AAMCO shall be entitled.  If Franchisee violates any restriction contained in this section 19.2 and it is necessary for AAMCO to seek equitable relief, the restrictions contained herein shall remain in effect for two (2) years after such relief is granted.

(d)  Franchisee agrees that the provisions of this covenant not-to-compete are reasonable.  If, however, any court should hold that the duration or geographical limits of any restrictions contained in this section 19.2 are unreasonable, the parties agree that such determination shall not render the restriction invalid or unenforceable, but that such restriction shall remain in full force and effect for such duration and within such geographical limits as the court shall consider reasonable.

20.1  Applicable Laws.   Franchisee agrees to comply with all federal, state, county and municipal laws and regulations which may be applicable to Franchisee's business.

20.2  Federal Trade Commission Orders.   Franchisee acknowledges receipt of copies of FTC Orders No. 8816 and C-2305 and Franchisee agrees to adhere to the provisions of these Orders in his dealings with the public and with AAMCO.

AT-93-10 (1) Renewal                                              9

**21.1   Jurisdiction.**   This Agreement shall be deemed to have been made within the Commonwealth of Pennsylvania, shall be interpreted according to the laws of Pennsylvania and Pennsylvania law shall apply to any claims arising out of, connected to or relating to this Agreement or its performance.

Franchisee hereby agrees that mailing to his last known address by certified or registered mail or by any overnight carrier service which provides a receipt of any process shall constitute lawful and valid process. Franchisee agrees to the jurisdiction and venue of the United States District Court for the Eastern District of Pennsylvania or to the Court of Common Pleas of Philadelphia or Montgomery County, Pennsylvania in any action, proceeding or counterclaim, whether at law or at equity, in any matter whatsoever which arises out of or is connected in any way with this Agreement or its performance, and Franchisee specifically agrees not to bring suit against AAMCO in any other jurisdiction or venue; provided, however, that nothing herein shall affect AAMCO's right to proceed against Franchisee in any other jurisdiction or venue.

**21.2   Jury Trial Waived.**   Franchisee and AAMCO hereby agree that they shall and hereby do waive trial by jury in any action, proceeding or counterclaim, whether at law or at equity, brought by either of them, or in any matter whatsoever which arises out of or is connected in any way with this Agreement or its performance.

**21.3   Severability.**   In the event that any portion, term or provision of this Agreement shall be decided by any court to be in conflict with the law of a state or jurisdiction, then the validity of the remaining portions, terms or provisions shall not be affected; the illegal part, term or provision shall be deemed not to be a part of this Agreement and this Agreement shall be considered as if the provision had never been a part of it.

**21.4   Notice.**   Whenever this Agreement requires notice, it shall be in writing and shall be sent by registered or certified mail, return receipt requested or overnight mail to the other party at the addresses set forth below, unless notice is given of a change of address. However, Franchisee agrees that notice may be sent to him at the AAMCO transmission repair center operated pursuant to the terms hereof.

**21.5   Recovery of Costs and Attorneys' Fees.**   In any court or arbitration proceeding brought by either party hereto arising out of or based upon this Agreement or its performance, the prevailing party shall recover all court costs, attorneys' fees and other expenses relating to such proceeding from the non-prevailing party.

**22.1   Mediation and Arbitration.**

(a) Non-binding mediation of disputes, controversies, or claims arising out of or relating to this Agreement shall be conducted in Philadelphia, Pennsylvania or in Chicago, Illinois, solely at Franchisee's option.

(b) All disputes, controversies or claims arising out of or relating to this Agreement shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association or its successor except for termination by AAMCO which is based in whole or in part, upon the fraudulent acts of Franchisee or Franchisee's failure to deal honestly and fairly with any customer of the center or Franchisee's failure to accurately report his gross receipts to AAMCO.  Arbitration shall be conducted in Philadelphia, Pennsylvania, unless otherwise agreed to by the parties.

**23.1   Entire Agreement.**   This Agreement consisting of  ten (10) pages and attachments contains the entire agreement between the parties concerning Franchisee's AAMCO franchise; no promises, inducements or representations not contained in this Agreement shall be of any force or effect, or binding on the parties.  Modifications of this Agreement must be in writing and signed by AAMCO.

IN WITNESS WHEREOF, the parties intending to be legally bound hereby, hereto have set their hands and seals as of the day and year first above written.

ATTEST:                                                          AAMCO TRANSMISSIONS, INC.

_____              By:_____


_____              _____
WITNESS                                                         FRANCHISEE                                         (SEAL)

_____              _____
WITNESS                                                         FRANCHISEE                                         (SEAL)

Address for AAMCO Transmissions, Inc.          Address for Franchisee:
One Presidential Boulevard
Bala Cynwyd, PA  19004